IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| INFERNAL TECHNOLOGY, LLC, | § | |
| TERMINAL REALITY, INC., | § | |
| | § | |
| *Plaintiffs*, | § | |
| | § | |
| v. | § | CIVIL ACTION NO.  2:19-CV-00248-JRG |
| | § | |
| SONY INTERACTIVE ENTERTAINMENT | § | |
| LLC, | § | |
| | § | |
| *Defendant*. | § | |

**ORDER**

Before the Court is Defendant Sony Interactive Entertainment LLC's ("Sony" or "SIE")
Motion to Strike and/or Exclude Supplemental Opinions of Lance E. Gunderson Regarding
Damages Relating to Method Claims (the "Motion to Strike"). (Dkt. No. 275). After consideration
of the briefing (Dkt. Nos. 275, 277) and the Supplemental Expert Report of Lance E. Gunderson
(the "Supplemental Report") (Dkt. No. 275-1), the Court is of the opinion that the Motion to Strike
should be and hereby is **GRANTED**. For the reasons stated below, the Court **STRIKES** the
Supplemental Report.

I.      **INTRODUCTION**

This is an action for patent infringement. Plaintiffs Infernal Technology, LLC and Terminal
Reality, Inc. (together, "Plaintiffs") sued Sony in July 2019, alleging infringement of U.S. Patent
Nos. 6,362,822 (the "'822 Patent") and 7,061,488 (the "'488 Patent"). (Dkt. No. 1). Plaintiffs assert
claims 1–4 and 7 of the '822 Patent and claims 1, 6, 27, 28, and 50 of the '488 Patent. (*See* Dkt.
No. 252 at ¶¶ 4–8). Claims 27, 28, and 50 of the '488 Patent are apparatus claims; the balance of
the asserted claims are method claims. Plaintiffs accuse Sony video games (the "Accused Games"),

Sony game consoles (the "Accused Consoles"), and a Sony video game streaming service (the "Accused Subscription") (collectively, the "Accused Products") of infringement. (*Id.*). Plaintiffs allege only direct infringement. (*See* Dkt. No. 222). Plaintiffs' direct infringement theory for the method claims is based on Sony's testing and demonstration of the Accused Games and Accused Consoles, during which Sony allegedly performs all steps of the asserted method claims. (*See* Expert Report of John C. Hart, Main Report, Dkt. No. 212-3 at ¶¶ 584–85).

In his Opening Report, Plaintiffs' damages expert Lance E. Gunderson calculates a royalty base entirely premised on sales of the Accused Products. (Expert Report of Lance E. Gunderson (the "Opening Report"), Dkt. No. 212-1 ¶¶ 34–36). Mr. Gunderson then calculates what in his opinion is a reasonable royalty based on the factors announced in *Georgia-Pacific Corp. v. United States Plywood Corp.*, 318 F. Supp. 1116 (S.D.N.Y 1970). (*Id.* ¶¶ 37–186).

On September 21, 2020, Sony filed its Motion to Exclude Portions of Lance E. Gunderson's Reasonable Royalty Calculations and Opinions Regarding Damages (the "Motion to Exclude") (Dkt. No. 212). In the Motion to Exclude, Sony argued that Mr. Gunderson's Opening Report was deficient because it failed to calculate the damages attributable to alleged infringement of the asserted method claims. (*Id.* at 12). Essentially, Sony argued that Dr. Gunderson did not establish how Sony's demonstration and internal testing of the Accused Products (*i.e.*, the alleged use of the claimed methods) was tied to its sales. *See Packet Intelligence LLC v. NetScout Systems, Inc.*, 965 F.3d 1299, 1314–15 (Fed. Cir. 2020) ("Method claims are 'not directly infringed by the mere sale of an apparatus capable of performing the claimed process.'" (quoting *Joy Techs., Inc. v. Flakt, Inc.*, 6 F.3d 770, 773 (Fed. Cir. 1993)). Sony asked the Court to strike Mr. Gunderson's "unreliable opinions regarding . . . damages for direct infringement of the Asserted Method Claims based on SIE's own internal use." (Dkt. No. 212 at 15).

The Court heard oral arguments on Sony's Motion to Exclude at the pretrial conference on January 19, 2021. (*See* Dkt. No. 267). After hearing argument from Sony and Plaintiffs, the Court expressed its doubt that Mr. Gunderson's Opening Report had adequately allocated sales-based damages to infringement of apparatus claims. (Transcript, Dkt. No. 271 at 103:24–104:14). The Court denied the Motion to Exclude but ordered that Plaintiffs would be given leave to serve a supplemental report from Mr. Gunderson that adequately allocates sales-based damages to infringement of apparatus claims. (*Id.*; *see also* Dkt. No. 274 at 4).

Mr. Gunderson issued a thirteen page, twenty-five paragraph Supplemental Report on February 2, 2021. Paragraphs five, six, and seven opine as to how Sony's sales of the Accused Product reflect the value and benefit Sony receives from allegedly practicing the asserted apparatus claims. (Supplemental Report ¶¶ 5–7). Outside of introduction and conclusion paragraphs, however, the balance of Mr. Gunderson's Supplemental Report is dedicated to bolstering his theories of sales-based damages for infringement of method claims. (*Id.* ¶¶ 8–22). Sony now moves to strike Mr. Gunderson's Supplemental Report and the opinions therein insofar as they relate to method claims.

## II.     LEGAL STANDARD

A qualified expert witness may testify in the form of an opinion if the expert's scientific, technical, or other specialized knowledge would help the jury determine an issue of fact. Fed. R. Evid. 702. The testimony must be based on sufficient facts or data, the product of reliable principles and methods, and a reliable application of those principles and methods to the facts of the case. *Id.* The trial judge in any case must undertake "a preliminary assessment of whether the reasoning or methodology underlying [expert] testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue." *Daubert v. Merrell Dow*

*Pharmaceuticals, Inc.*, 509 U.S. 579, 592–93 (1993). Essentially, the trial judge is the gatekeeper and must ensure that only relevant and reliable expert testimony reaches the jury. *See id.*

"To be admissible, expert testimony opining on a reasonable royalty must 'sufficiently [tie the expert testimony on damages] to the facts of the case. If the patentee fails to tie the theory to the facts of the case, the testimony must be excluded.'" *Exmark Mfg. Co. v. Briggs & Stratton Power Prods. Grp., LLC*, 879 F.3d 1332, 1349 (Fed. Cir. 2018) (quoting *Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292, 1315 (Fed. Cir. 2011)).

Sale of an apparatus is not an infringement of a method claim merely because the apparatus is capable of performing the claimed method steps. *Packet Intelligence*, 965 F.3d at 1314–15; *see also Joy Techs.*, 6 F.3d at 773 (Fed. Cir. 1993) (collecting cases). Even if a defendant's internal use of a method allegedly drove sales, "that fact would only justify instances of internal use being counted as part of the royalty base." *Packet Intelligence*, 965 F.3d at 1315.

Some courts have allowed sales-based damages for internal practice of method claims, but only upon proof of a causal relationship between performance of the method steps and sales. *E.g.*, *Carnegie Mellon Univ. v. Marvell Tech. Grp., Ltd.*, 890 F. Supp. 2d 602, 609–11 (W.D. Pa. 2012). In *Carnegie Mellon*, the defendant practiced the claims of a method patent during testing and development of a computer chips for specific potential customers. *Id.* at 604. The defendant would engineer the chips to meet the potential customer's needs, in the hopes of winning an exclusive contract to supply chips for that customer. *Id.* at 604–05. Since the infringing use was the but-for cause of the sales, the district court concluded that the plaintiff had "demonstrated that Marvell infringes the CMU Patents and that infringement is directly related to Marvell's sales." *Id.* at 610; *see also Carnegie Mellon Univ. v. Marvell Tech. Grp.*, 807 F.3d 1283, 1307 (Fed. Cir. 2015) (noting in passing that "all of Marvell's sales are strongly enough tied to its domestic infringement

4

as a causation matter to have been part of the hypothetical-negotiation agreement" but reversing in part on extraterritoriality grounds).

### III.    DISCUSSION

As the Court observed at the pretrial conference, Mr. Gunderson's Opening Report is clearly a sales-based damages model, and it does not distinguish between damages for infringement of apparatus claims and damages for infringement of method claims. (Transcript, Dkt. No. 271 at 104:4–14). The Opening Report does not meaningfully connect the alleged uses of the claimed methods (Sony's internal testing and demonstration) with the sales of the Accused Products. *Packet Intelligence*, 965 F.3d at 1314–15. The Court has a duty as a gatekeeper to prevent the jury from hearing legally flawed expert opinions. *Daubert*, 509 U.S. at 592–93; *Exmark*, 879 F.3d at 1349.

Unlike Mr. Gunderson's improper opinions on foreign sales—which could be struck in part to extract the permissible opinions on domestic infringement (*see* Transcript, Dkt. No. 271 at 83:23–84:23)—a proper opinion on damages for apparatus claims was inextricable from Mr. Gunderson's Opening Report. This is because the Opening Report does not indicate what portion of the reasonable royalty is attributable to Sony's alleged sales of claimed apparatuses and what portion is attributable to use of claimed methods. It contains a unitary sales-based damages model, with royalties for method claims and apparatus claims intertwined. The Opening Report presented the Court with a difficult choice: send a legally flawed damages model to the jury, or strike Mr. Gunderson's Opening Report in its entirety. The first option was clearly unacceptable.

The second option—striking Mr. Gunderson's Opening Report in its entirety—would close the door on Plaintiffs' damages case. To avoid a forced grant of summary judgment, the Court would have to reopen expert discovery to allow Mr. Gunderson or another damages expert to issue

a new report. Sony would be entitled to additional expert deposition time, and Sony's damages expert, Ms. Lauren Kindler, would likely also have to issue a new or supplemental rebuttal report. As trial was a mere few weeks away, this would without a doubt require a continuance.

Faced with this unenviable choice, the Court instead decided to give Plaintiffs a limited opportunity to cure the flaws in Mr. Gunderson's Opening Report:

> [THE COURT:] With regard to the third issue, it's clear that Mr. Gunderson's opinion is derived from the sales to customers, and I do not find or see in his report an allocation of infringement related to just the apparatus claims based on sales.
> And in light of the differences between what's necessary to support and establish damages between apparatus and method claims and to avoid an issue later in the trial and deal with it early on rather than later, as, quite frankly, my experience has been it's almost always better to address issues earlier rather than later, I'm going to afford the Plaintiffs a limited opportunity to have Mr. Gunderson amend his report -- or supplement his report to include sales of products -- only sales of products that relate to the infringement of apparatus claims.

(Transcript, Dkt. No. 271 at 104:4–14). The Court also afforded Sony a limited opportunity to depose Mr. Gunderson on any such supplemental opinions. (*Id.* at 104:17–23). Thus, the Court's ruling would allow Plaintiffs to present a legally sound damages theory to the jury and give Sony a fair chance to test that theory—all while preserving the trial date.

Instead, however, Plaintiffs and Mr. Gunderson chose to double down on their original theory. Mr. Gunderson's Supplemental Report is rife with discussions of method claims and the benefits of testing. Mr. Gunderson continues to opine unequivocally that "[o]ne of the ways to determine the value of an infringing use of a patented method is to ascertain how many sales were made based on that infringing use." (Supplemental Report ¶ 9). He explains that his "calculation of reasonable royalty damages based on the Accused Games sales is applicable to either the asserted apparatus claims or the asserted method claims." (*Id. ¶* 10). Mr. Gunderson then opines for six pages on the benefits of testing and demonstration of video games and consoles.

(*Id.* ¶¶ 11–17). Concluding, Mr. Gunderson attempts to draw a nexus between practicing the method steps and Sony's sales. (*Id.* ¶¶ 18–22).

Aside from this clearly exceeding the scope of the supplementation permitted by the Court, Mr. Gunderson's Supplemental Report fails to cure the defects in his Opening Report. Oddly, it does not even meaningfully attempt to do so. The Court granted leave to correct a particular flaw in a particular manner. The Court did not grant a Plaintiffs a general license to inject new opinions into their damages case. The Court certainly did not permit Plaintiffs a second bite at the apple that is drawing a nexus between method claims and sales. The Court's ruling from the bench was clear: Plaintiffs and Mr. Gunderson were given a "limited opportunity" to present opinion on "only sales of products that relate to the infringement of apparatus claims." (Transcript, Dkt. No. 271 at 104:10–14). No part of the Supplemental Report does that, and the entirety of the Supplemental Report violates both the letter and spirit of the Court's ruling. Consequently, the Supplemental Report should be struck in its entirety.

## IV.    CONCLUSION

For the foregoing reasons, the Court concludes that Sony's Motion to Strike should be and hereby is **GRANTED**. It is therefore **ORDERED** that Mr. Gunderson's Supplemental Report is **STRUCK**.

**So ORDERED and SIGNED this 26th day of February, 2021.**

RODNEY  GILSTRAP
UNITED STATES DISTRICT JUDGE