**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | | |
|---|---|---|
| INFERNAL TECHNOLOGY, LLC, | § | |
| TERMINAL REALITY, INC., | § | |
| | § | |
| *Plaintiffs*, | § | |
| | § | |
| v. | § | CIVIL ACTION NO.  2:19-CV-00248-JRG |
| | § | |
| SONY INTERACTIVE ENTERTAINMENT | § | |
| LLC, | § | |
| | § | |
| *Defendant*. | § | |

**MEMORANDUM OPINION AND ORDER**

Before the Court is Defendant Sony Interactive Entertainment LLC's ("SIE") Motion to

Apply Issue Preclusion Regarding Plain and Ordinary Meaning of the Term "Said Observer Data"

or, Alternatively, to Clarify the Plain and Ordinary Meaning Pursuant to *O2 Micro* (the "Motion").

(Dkt. No. 332).  Having considered the Motion and the complete briefing, and for the reasons set

forth herein, the Court is of the opinion that SIE's Motion should be and hereby is **DENIED**.

## I.    BACKGROUND

On September 13, 2021, the Court bifurcated the above-captioned case setting all issues

except damages for trial beginning October 4, 2021.  (Dkt. No. 319).  On September 16, 2021, in

another case involving Plaintiffs Infernal Technology, LLC and Terminal Reality, Inc.

(collectively, "Plaintiffs") and the same patents, the Northern District of Texas (the "NDTX")

granted summary judgment of non-infringement in favor of Activision Blizzard, Inc.

("Activision"), the defendant in that case.  (*Infernal Tech. v. Activision Blizzard, Inc.*, Case No.

3:18-cv-1397, Dkt. No. 343 (N.D. Tex. Sept. 16, 2021) (the "*Activision* Case")).  The record before

the NDTX is under seal and not before this Court.  (*Activision* Case, Dkt. Nos. 246, 258, 278, 339).

The Memorandum Opinion and Order granting summary judgment of non-infringement in favor

of Activision was included with the parties' briefing and is before this Court.  (Dkt. No. 322-1) (the "*Activision* Order").  On September 21, 2021, SIE received a copy of the *Activision* Order, which was filed under seal.  (Dkt. No. 322 at 8).  On September 22, 2021, SIE filed this Motion to apply issue preclusion to the plain and ordinary meaning of "said observer data," or in the alternative, to construe the term under *O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co., Ltd.*, 521 F.3d 1351, 1361-62 (Fed. Cir. 2008).  (*Id.*).

## II.    LEGAL STANDARD

The Federal Circuit applies the law of the regional circuit to issues of collateral estoppel. *RF Del., Inc. v. Pacific Keystone Techs., Inc.*, 326 F.3d 1255, 1261 (Fed. Cir. 2003).  For issue preclusion to apply, the following four elements must be met: "(1) the issue under consideration is identical to that litigated in the prior action; (2) the issue was fully and vigorously litigated in the prior action; (3) the issue was necessary to support the judgment in the prior case; and (4) there is no special circumstance that would make it unfair to apply the doctrine." *Copeland v. Merrill Lynch & Co., Inc.*, 47 F.3d 1415, 1422 (5th Cir. 1995); *State Farm Mut. Auto. Ins. Co. v. Logisticare Sols., LLC*, 751 F.3d 684, 689 (5th Cir. 2014).  Ultimately, issue preclusion is an "equitable doctrine" and the "discretion vested in trial courts to determine when it should be applied is broad." *Nations v. Sun Oil Co.*, 705 F.2d 742, 744 (5th Cir. 1983) (citing *Parklane Hosiery Co., Inc. v. Shore*, 439 U.S. 322, 331 (1979)).

With respect to claim construction, "district courts are not (and should not be) required to construe *every* limitation present in a patent's asserted claims."  *O2 Micro*, 521 F.3d at 1362. Instead, district courts are to resolve "fundamental dispute[s] regarding the scope of a claim term." *Id.* at 1363.

## III.    DISCUSSION

SIE's Motion presents two issues: (1) whether Plaintiffs should be precluded from arguing the term "said observer data" should be construed in accordance with its plain and ordinary meaning; and, alternatively, (2) whether the Court should clarify the plain and ordinary meaning of the term "said observer data" under *O2 Micro*.  In analyzing SIE's Motion, the parties refer to certain elements of an exemplary claim of one of the asserted patents, which is reproduced below:

> [1(pre)] 1. A shadow rendering method for use in a computer system, the method comprising the steps of:
>
> [1(a)] providing observer data of a simulated multi-dimensional scene;
>
> [1(b)] providing lighting data associated with a plurality of simulated light sources arranged to illuminate said scene, said lighting data including light image data;
>
> [1(c)] for each of said plurality of light sources, comparing at least a portion of said observer data with at least a portion of said lighting data to determine if a modeled point within said scene is illuminated by said light source and storing at least a portion of said light image data associated with said point and said light source in a light accumulation buffer; and then
>
> [1(d)] combining at least a portion of said light accumulation buffer with said observer data; and
>
> [1(e)] displaying resulting image data to a computer screen.

(Claim 1, U.S. Patent No. 6,362,822) (the "'822 Patent").[1]

### A.    Issue Preclusion

SIE argues that Plaintiffs should be precluded from relitigating the issue of claim construction as to the term "said observer data" in this case after having "litigated and lost" the issue in the NDTX.  (Dkt. No. 322 at 9).  SIE argues that the NDTX construed the term "said observer data" in claim element 1(d) as referring to *all* the "observer data" identified in claim element 1(a) (as opposed to a subset) and that this Court should apply that construction in this case.

---

[1] The claim elements at issue appear in all asserted independent claims in both asserted patents.

(*Id.* at 8).  For the reasons set forth below, the Court finds that SIE has failed to satisfy at least three of the necessary elements of issue preclusion.

**Elements 1 and 2: (1) The issue under consideration is identical to that litigated in the prior action; and (2) the issue was fully and vigorously litigated in the prior action.**  The parties appear to agree that there is no difference between the holding in the NDTX and the relief SIE seeks from this Court.  (Dkt. Nos. 322, 330).  SIE also points out that both cases involve the same patents and overlapping asserted claims.  (Dkt. No. 322 at 9).

The dispute here is whether the particular construction advocated by SIE for "said observer data" was actually litigated before the NDTX.  SIE argues that the NDTX construed the "said observer data" term when it rejected Plaintiffs' argument that "said observer data" in claim element 1(d) did not need to combine the entire "observer data" identified in claim element 1(a).  (*Id.*).

Plaintiffs respond that the issue before the NDTX was different.  There, Plaintiffs argue, the dispute was "whether the limitation 'observer data' had a different meaning in the three different places the term was used in Claim 1 (steps 1(a), 1(c) and 1(d) of Claim 1)."  (Dkt. No. 330 at 3).  Plaintiffs contend that here, however, the dispute is whether "said observer data" in claim element 1(d) refers to ***all*** of the data identified as "observer data" in claim element 1(a) (as opposed to a subset).[2]  (*Id.*).

The Court is not convinced that the issue SIE seeks to preclude here was "fully and vigorously litigated in the prior action" as the Fifth Circuit requires.  *Copeland*, 47 F.3d at 1422.  The *Activision* Order makes clear that the NDTX held that "said observer data" in element 1(d) must be the complete data identified in element 1(a).  (Dkt. No. 322-1 at 14).  The record before

---

[2] Plaintiffs represent that the issue actually litigated before the NDTX will not be an issue in this case because Plaintiffs intend to argue that "the term 'said observer data' in step 1(d) of Claim 1 refers back to the first use of that term in step 1(a) of that claim, as it has been construed by the Court."  (Dkt. No. 330 at 1).

this Court, however, does not show that this was the issue the parties litigated before the NDTX. In its brief, SIE identifies portions of the *Activision* Order where the NDTX rejected arguments made by Plaintiffs. (Dkt. No. 322 at 10). These portions, however, do not lend full clarity to what was actually litigated in that case. (*Id.*). Instead, those portions are part of the NDTX's explanation of how its holding is supported by the asserted patents. (Dkt. No. 322-1 at 11–13). The mere rejection of Plaintiffs' position, without more, does not provide insight into what the parties actually litigated before the NDTX. For example, it appears from the *Activision* Order that the snippets identified by SIE in the *Activision* Order were in the context of Plaintiffs' argument about what constitutes "observer data." (*Id.*). This is different from what the NDTX actually decided— that "said observer data" in claim element 1(d) must be all (and not a subset of) the "observer data" identified in claim element 1(a).

Further, the NDTX was clear that it was "not construing the claim language" (*Id.*), which is the precise relief SIE is requesting from this Court. (Dkt. No. 322 at 2) ("SIE respectfully requests that the Court apply issue preclusion to the construction of the term 'said observer data.'"). Even Activision conceded it was not seeking claim construction in the *Activision* Case. (Dkt. No. 322-1 at 8).

Finally, although the *Activision* Order is before the Court, the briefing and transcript of the oral argument in the *Activision* Case are not before the Court. Such information is material to assessing what was litigated before the NDTX. The Court declines to speculate about the contents of the record in the *Activision* Case.

Accordingly, the Court finds that SIE has not shown these two necessary elements of issue preclusion are met.

**Element 4: There is no special circumstance that would make it unfair to apply the doctrine.**   Although the aforementioned analysis is enough to defeat SIE's request for issue preclusion, the Court also notes that it would be unfair to apply the doctrine in this case.  Both parties have expended significant time, resources, and money in preparing this case for trial before the NDTX's decision, which is currently pending on appeal before the Federal Circuit.  (*Activision* Case, Dkt. No. 349).  The Supreme Court has stated that the rationale behind the doctrine of issue preclusion is to "protect against the expense and vexation attending multiple lawsuits, conserve judicial resources, and foster reliance on judicial action by minimizing the possibility of inconsistent decisions." *Taylor v. Sturgell*, 553 U.S. 880, 892 (2008).  The Court finds that these interests would not be served by applying issue preclusion here.  Such would waste the time, money, and effort the parties have put forth to prepare this case for trial, which was set before the NDTX's decision.  Further, as noted above, appeal of the *Activision* Order is currently pending before the Federal Circuit.  It is impossible to know whether the *Activision* Order will withstand appellate review or be reversed.

Accordingly, for the reasons stated above and in reliance on the broad discretion vested in trial courts in applying issue preclusion, *Nations*, 705 F.2d at 744, the Court finds it would be inappropriate to apply the doctrine of issue preclusion in this case.

### B.   Claim Construction

SIE argues that the "*Activision* Order resolved a disputed issue of claim scope" and that the Court should provide clarity on the meaning of the claim term "said observer data."  (Dkt. No. 332 at 1–2).  SIE argues that the parties' briefing shows there "is clearly a dispute . . . as to the plain and ordinary meaning of 'said observer data.'"  (*Id.* at 3).  SIE recites the reasoning of the *Activision* Order as support for its proposed meaning of the term "said observer data."  (Dkt. No. 322 at 11–12).

Plaintiffs respond that SIE has not shown there is a fundamental dispute with respect to claim scope.  As noted above, Plaintiffs acknowledge that they intend to argue that "the term 'said observer data' in step 1(d) of Claim 1 refers back to the first use of that term in step 1(a) of that claim, as it has been construed by the Court."  (Dkt. No. 330 at 1).  Plaintiffs argue that the *Activision* Order "disavowed that it was rendering any new claim construction in that case and was applying the existing claim construction to the facts in that case."  (Dkt. No. 335 at 1).  Plaintiffs also contend that the agreed construction of "observer data" during the *Markman* process resolved any issue related to claim scope.[3]

The Court is not persuaded that SIE has shown there is a fundamental dispute with respect to claim scope that the Court should resolve under *O2 Micro*.  The parties agreed to the construction of the term "observer data" during the *Markman* process.  Further, Plaintiffs have now represented that they are not going to argue that "said observer data" in claim elements 1(c) and 1(d) refers to different "observer data" other than the data identified in claim element 1(a).  The Court finds that the constructions already adopted in this case along with Plaintiffs' recent representations are enough for this case to proceed to trial without additional claim construction.

Further, this case has been pending since July 2019 and SIE never raised this allegedly fundamental dispute until just before trial.  The Court does not believe that the Federal Circuit's decision in *O2 Micro* permits a litigant to disrupt trial by raising new claim construction issues days before trial is set to begin.  The Federal Circuit has repeatedly emphasized that there are key facts central to *O2 Micro*'s holding, such as the early nature of the parties' dispute, including at *Markman*, and inviting the jury to choose between alternative meanings of technical terms or

---

[3] The parties agreed that the term "observer data of a simulated multi-dimensional scene" means "data representing at least the color of objects in a simulated multidimensional scene as viewed from an observer's perspective."  (Dkt. No. 105-1 at 3).

7

words of art.  *Function Media, L.L.C. v. Google, Inc.*, 708 F.3d 1310, 1324–26 (Fed. Cir. 2013); *Verizon Servs. Corp. v. Cox Fibernet Va., Inc.*, 602 F.3d 1325, 1334 (Fed. Cir. 2010); *Broadcom Corp. v. Qualcomm Inc.*, 543 F.3d 683, 694 (Fed. Cir. 2008).  Such is not the case here.  In fact, both the NDTX and Activision agreed that claim construction of "said observer data" was unnecessary.  SIE apparently did, too, given its silence for over two years—until it saw the *Activision* Order just before trial.  (Dkt. No. 322-1 at 8).  SIE cites no authority that *O2 Micro* applies to alleged claim construction issues raised for the first time days before trial.  Absent such authority, the Court declines to find that *O2 Micro* requires the Court's intervention.

## IV.   CONCLUSION

For the reasons set forth above, SIE's Motion is **DENIED** in all respects.


## So Ordered this

**Sep 30, 2021**


_____
RODNEY  GILSTRAP
UNITED STATES DISTRICT JUDGE